PEOPLE v FIELDS

1. CRIMINAL LAW—DEFENSES—INSANITY—EXPERT WITNESSES—PSYCHI-
   ATRISTS—CONTINUANCE—MISTRIAL.

   A continuance or later a mistrial should have been granted a
   defendant to allow him to secure the services of another
   psychiatrist where the defense was insanity and it became
   apparent that the psychiatrist appointed by the trial court
   could not be produced through no fault of defendant or his
   counsel, the defense was timely raised by defendant, no undue
   delay was attributable to defendant, and defendant had no
   opportunity to present this defense without the benefit of
   expert assistance.

2. CRIMINAL LAW—DEFENSES—INSANITY—EVIDENCE—DEMEANOR OF
   DEFENDANT—TESTIMONY OF DEFENDANT—JURY QUESTION.

   A trial court may not rely on a defendant's demeanor or his
   statements in determining whether or not the defendant will be
   allowed to present a defense of insanity; the defendant's de-
   meanor and statements are for the jury on the question of
   sanity.

Appeal from Recorder's Court of Detroit, Robert
J. Colombo, J. Submitted Division 1 March 5, 1974,
at Lansing. (Docket No. 17791.) Decided August 28,
1974. Leave to appeal applied for.

Allen Fields was convicted of kidnapping and
armed robbery. Defendant appeals. Reversed and
remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law §§ 48, 53.
   Validity and construction of statutes providing for psychiatric
   examination of accused to determine mental condition. 32 ALR2d
   434.

Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Gerard A. Poehlman,* Assistant Prosecuting Attorney, for the people.

*Robert E. Slameka,* for defendant on appeal.

Before: McGregor, P. J., and R. B. Burns and R. L. Smith,* JJ.

R. L. Smith, J. Defendant was convicted by a jury of kidnapping and armed robbery. MCLA 750.349; MSA 28.581; MCLA 750.529; MSA 28.797. Trial was commenced March 22, 1973 and on April 18, 1973 the defendant was sentenced to a term of 7 to 20 years in prison. Defendant appeals as of right and we reverse and remand for a new trial.

Before his trial the defendant petitioned for forensic examination. A hearing was held on this petition on February 11, 1972 and the defendant was ordered committed to the Forensic Center for 60 days to determine whether or not he was competent to stand trial. On March 16, 1972, the trial court found that the defendant was not competent to stand trial and committed him to the Department of Mental Health. On December 14, 1972, the Ionia State Hospital reported to the trial court that the defendant was then competent to stand trial. However, the report also indicated that:

"Delay, length, or arduousness of a trial would be expected to significantly alter the mental capabilities of the defendant.

\* \* \*

"It is considered essential that the patient continue

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

on his present medication consisting of Stelazine 10 mg. b.i.d. and Artane 2 mg. b.i.d. Without such medication, it is felt the patient would promptly show a level of decompensation to a point that he is incompetent. Further, excessive delays in bringing him to trial are likely to result in decompensation rendering a state of incompetency to stand trial."

On January 26, 1973, a sanity hearing was held and the defendant was found competent to stand trial. Defendant's appointed counsel filed a petition dated January 29, 1973 for the appointment of a psychiatrist. In this petition he indicated that he felt that defendant was mentally ill and was unable to assist in the preparation of his defense. On February 23, 1973, Dr. Clemens H. Fitzgerald was appointed in response to this petition. On February 23, 1973, defendant also filed a notice of his intent to use insanity as a defense.

At the outset of the trial on March 22, 1973, the defendant's counsel objected to proceeding to trial, indicating that in his opinion the defendant was not competent to stand trial for the reasons that the defendant could not discuss the matter with him or relate any of the facts of the case. Counsel also informed the court that Dr. Fitzgerald's office had informed him only two days before that the doctor could not be located and more time was needed to locate him. Motions for a new competency hearing and for a continuance were denied.

At the conclusion of the direct examination of the complaining witness, defendant's counsel again informed the court of his inability to conduct a cross-examination of the people's witnesses because of his inability to get any cooperation from his client. In response to counsel's statement, the court indicated that he was of the opinion that the defendant could cooperate if he chose to do so and

that he was familiar with these situations, having only the previous month experienced a similar performance. Thereupon, counsel indicated that he would have no cross-examination of the witnesses and the people proceeded to put in their case and rested.

Trial was adjourned to the following day to give counsel an opportunity to locate Dr. Fitzgerald. On the following day counsel informed the court that the doctor could not be located and asked for a mistrial. This motion was denied but the trial was adjourned to the following Monday to give counsel another chance to locate the doctor.

On Monday, March 26, 1973, defendant's counsel reported to the court that Dr. Fitzgerald could not be located and that he had been reported to the police department as a missing person. Counsel informed the court that in a telephone conversation with the doctor he had been informed that in the doctor's opinion the defendant was suffering from mental illness. Counsel further informed the court that defendant's only defense was his mental illness, that he could not put defendant on the stand under these circumstances, and that without the doctor's testimony he would have no argument to the jury. The trial court noted the defendant's continuing objection to proceeding with the trial. The verdict of the jury was guilty as charged.

At the sentencing proceedings the following appears in the record:

"*Mr. Townsend [defense counsel]:* Your Honor, under the circumstances I believe it would be in the defendant's best interests if no statements were made at this time.

"*The Court:* Actually I know it's a revelation to you and a startling one to you that he feigned his insanity defense but I mean that he—I always felt he was

feigning it and yet he saved himself, frankly, a lot of time. To me, that's a good indication that he is coming around. He took a calculated risk and he details it all in his probation statement, don't you, Mr. Fields?

"*The Defendant:* Yes, sir.

"*The Court:* And you are the third fellow this year, incidentally, that has appeared before me with the same type of defense and the same type of modis operendi *[sic]* trying to set up an insanity defense. However, whoever is encouraging this and teaching it over there is kind of clever because they can convince your lawyers and even other people that there can be something wrong but who was it, by the way, or do you want to say? Who was your tutor over in the jail as to how to set up the insanity defense?

"*The Defendant:* See, at first I didn't realize the crime that I had committed until I had got locked up and then people started telling me about how much time it carried.

"*The Court:* You mean you didn't realize how serious the crime was that you committed?

"*The Defendant:* Yes. I took it up on my own.

"*The Court:* All right. Well it is serious and it is the type of offense that, frankly, I originally planned on imposing a sentence here of twenty-five to fifty years on both counts. But you did come clean on the thing, that shows, in my judgment, a great step forward in your own rehabilitation and your lawyer who very ably defended you in this case, he has nothing, you took him in, you realize that?

"*The Defendant:* Yes.

"*The Court:* Even with all of that, he was a staunch believer in how ill you were. It was a farce, that's correct, isn't that right?

"*The Defendant:* Beg your pardon?

"*The Court:* The insanity defense was a farce?

"*The Defendant:* It was a put-on.

"*The Court:* Okay. You saved yourself a lot of time. I knew it all along and one other person, at least, did, too. There may have been others, too, but the probation officer was rather hep to you plus the fact that when you left the courtroom, you remember telling this police

officer here, 'Well it was a gamble and we lost?' Patrolman Delagado, do you remember that? Do you remember that?

"*The Defendant:* I may have, I don't know."

In view of our holding in this case we need not determine whether or not the trial court erred reversibly in refusing to hold a competency hearing when requested to by defendant's counsel. We state only that it certainly would have been better practice to have done so.

The second issue raised on this appeal presents the question of whether or not the trial court should have granted a continuance or as events developed a mistrial when it became apparent that the psychiatrist appointed by the court could not be produced through no fault of the defendant or his counsel. The defense of insanity was timely raised by defendant. His counsel noted on the record that this was the only defense he had because of the failure of defendant to cooperate with him. No undue delay can be attributed to the defendant. In our view defendant had no opportunity to present this defense without the benefit of expert assistance. We cannot say on this record that such assistance was available to him. A mistrial should have been granted, if need be, to allow him to secure the services of another psychiatrist.

The plaintiff argues that the defendant's insanity defense is a sham because he confessed to the sentencing court that this defense was a "put-on". We do not believe it appropriate for the trial court to rely on the defendant's demeanor or his statements in determining whether or not the defendant will be allowed to present a defense of insanity. The defendant's demeanor and statements are for the jury on the question of sanity. In *Pate v Robinson,* 383 US 375, 386; 86 S Ct 836, 842; 15 L

Ed 2d 815, 822 (1966), in speaking to a related issue the Court said:

"While Robinson's demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue. Cf. Bishop v United States, 350 US 961; 76 S Ct 440; 100 L Ed 835 (1956), reversing 96 App DC 117, 120; 223 F2d 582, 585 (1955)."

Reversed and remanded for a new trial.
All concurred.